788425.3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CATHALENE S. GATTO,                          )
                                             )
            Plaintiff,                       )
                                             )
      vs.                                    )  Civil Action No.  08-00858
                                             )
VERIZON PENNSYLVANIA INC.,                   )  Judge Joy Flowers Conti
                                             )
            Defendant.                       )  ***ELECTRONICALLY FILED***

## BRIEF IN SUPPORT OF MOTION OF HUGH F. McGOUGH TO QUASH SUBPOENA

Hugh F. McGough, through his undersigned counsel of record, has filed a Motion, pursuant to Fed. R. Civ. P.45 (c)(3)(A)(iii) and (iv), to quash the subpoena issued to him on behalf of the Defendant to compel his testimony about, and his production of documents relating to, the mediation he conducted between the parties on October 8, 2008 as a court-appointed mediator, on the following grounds:

1.    The subpoena requires disclosure of confidential and privileged mediation communications and documents, which McGough is required not to disclose pursuant to the ADR Policies and Procedures of this Court, 42 Pa. C.S. § 5949 (entitled "confidential mediation communication and documents"), and the Model Standards of Conduct for Mediators.

2.    The docket in this case does not reveal, and McGough has no knowledge: (a) that each of the parties has agreed that McGough may disclose protected mediation communications and documents; or (b) that this Court has determined that each of the parties has otherwise relinquished his, its or her individual right and privilege to

788425.3

preserve the confidentiality of the mediation communications and documents; or (c) that this Court has determined, "after application of legal tests which are appropriately sensitive to the policies supporting the confidentiality of mediation proceedings", that the asserted need for disclosure is so great as to outweigh the interests in mediation confidentiality such that an exception to the privilege, right and duty to maintain the confidentiality of the mediation communications exists.

3.    The subpoena subjects McGough to undue burden in the circumstances of this case inasmuch as the settlement agreement Defendant seeks to enforce was entered into, if at all, 12 days after the mediation session concluded and without any involvement by the mediator.  *See* Declaration of Hugh F. McGough attached as Exhibit A to his Motion to Quash.

## I.    The Subpoena Must be Quashed Pursuant to Fed. R. Civ. P.45 (c)(3)(A)(iii) Because it Requires Disclosure of Mediation Communications and Documents which are Privileged and which the Mediator and Each of the Parties are Prohibited from Disclosing or Using

Fed. R. Civ. P.45(c)(3)(A)(iii) provides that the court "must" quash or modify a subpoena that:

> "(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]"

McGough respectfully submits that the mediation communications and documents Defendant seeks to compel him to reveal are privileged and otherwise protected from disclosure so that subpoena must be quashed unless the court determines that an exception applies, or that each party to the mediation has waived his, her or its individual right to preserve the confidentiality of such communications and documents.

788425.3

A.    **The Mediation Communications and Documents at Issue Are Privileged and Otherwise Protected Against Disclosure by State and Federal Law and by the ADR Policies and Procedures of this Court**

In *Sheldone v. Pa Turnpike Commission*, 104 F. Supp. 2d 511, 516, 2000 U.S. Dist. LEXIS 12681 **16 (W.D. Pa. 2000), this court recognized the need to protect the confidentiality of mediation communications and documents:

> By definition, mediation is a non-binding dispute resolution technique through which 'a neutral party [. . .] facilitates the resolution of a dispute by assisting parties in reaching a voluntary agreement.' [. . .] The very nature of this process mandates a need for confidence and trust so that the parties can honestly and openly discuss the strengths and weaknesses of their positions in an attempt to reach a voluntary settlement.

In his treatise on Alternative Dispute Resolution, Robert A. Creo further addressed the practical and policy reasons for protecting the confidentiality of communications made during the mediation process:

> The process is premised on the ability of a participant to communicate [. . .] with the mediator in a private caucus. This internal confidentiality is akin to a fiduciary obligation between mediator and participant. The mediator owes each party [a duty] to keep private assertions confidential. This is a bedrock foundation of mediation.
>
> * * * * *
>
> States like Pennsylvania have enacted broad definitions of mediation to encourage its use [. . .]. Without these broad protections, it is unlikely that parties would intentionally disclose information that makes them vulnerable in mediation. Thus, the whole purpose of frank and candid communication would be undermined since parties would just decline to share information. If mediators have to disclose that statements made in joint sessions or privately to the mediator are discoverable and admissible unless framed to meet the narrower approach of federal or state evidentiary rules, there would be little advantage for parties to go to mediation.
>
> For over two decades, the federal courts have recognized that requiring mediators to testify weakens public policy in favor of the amicable resolution of disputes.

788425.3

1 Creo, *Alternative Dispute Resolution,* § 9.1.1.    *See also* Declaration of Bernhard Behrend, attached to McGough's Motion as Exhibit B.

The Pennsylvania Judicial Code provides broad protection for mediation communications and documents, creates an express privilege against disclosure, and makes such communications and documents inadmissible in any judicial or other action or proceeding. The statute, 42 Pa. C.S. § 5949, provides, in part:

> § 5949.  Confidential mediation communication and documents
>
> (a)    General Rule – Except as provided in subsection (b), all mediation communications and mediation documents are privileged.  Disclosure of mediation communications and mediation documents may not be required or compelled through discovery or any other process.  Mediation communications and mediation documents shall not be admissible as evidence in any action or proceeding, including, but not limited to, a judicial, administrative or arbitration action or proceeding."[1]

The mediation privilege in 42 Pa. C.S. §5949 is "one of the broadest privileges in Pennsylvania.  It absolutely protects not only results, but all communications, including any demands for settlement or offers in compromise, from disclosure." Bernstein, *2006 Pennsylvania Rules of Evidence,* Comment 19 to Pa. R.E. 501, pp.327-328(Gann).  The privilege created by this statute "goes to the process itself and not [just] the parties.  The mediator can decline to testify despite the desires of the parties." 1 Creo, *supra* at § 9.2.1.

---

[1] "Mediation" is defined in the statute as "[t]he deliberate and knowing use of a third person by disputing parties to help them reach a resolution of their dispute." The term, "mediation communication", is defined in the statute as a "communication, verbal or non-verbal, oral or written, made by, between or among a party, mediator, mediation program or any other person present to further the mediation process when the communication occurs during a mediation session or outside a session when made to or by the mediator or mediation program".  "Mediation document" is defined as "[w]ritten material, including copies, prepared for the purpose of, in the course of or pursuant to mediation.  The term includes, but is not limited to, memoranda, notes, files, records and work product of a mediator, mediation program or party."

As McGough, the mediator in this case, has attested in his Declaration, he was not involved in, and has no knowledge of, the negotiations between the parties after the mediation session concluded on October 8, 2008. Such private negotiations, though perhaps shielded by Pa. R. E. 408 or Fed. R. Evid. 408(a), are not protected "mediation communications." *See United States Fid. & Guar. Co. v. Dick Corp.*, 215 FRD 503, 2003 U.S. Dist. LEXIS 9444 (W.D. Pa. 2003). However, the subpoena served on McGough commands him to testify about mediation communications and to produce "[n]otes or other documents pertaining to the mediation between Cathalene Gatto and Verizon Pennsylvania Inc. on October 8, 2008."

The documents and testimony sought by the Defendant's subpoena are patently communications and documents protected by 42 Pa. C.S. § 5949, disclosure of which "may not be required or compelled through discovery or any other process", and which are not "admissible as evidence in any action or proceeding." *See United States Fid. & Guar. Co. v. Bilt-Rite Contrs., Inc.*, 2005 U.S. Dist. LEXIS 9299 (E.D. Pa. May 16, 2005)(applying 42 Pa. C.S. § 5949 in a diversity case to preclude evidence of mediation communications and documents); *Mongeluzzi v. Pansini & Lessin*, 61 Pa. D&C 4th 52 (C.P. Phila. 2001), *aff'd. mem.* 839 A.2d 1170 (42 Pa. C.S. § 5949 precludes evidence of communications made during and related to mediations.)

The statute provides narrow exceptions to the general rule of confidentiality and inadmissibility with respect to:

(1)   Most written settlement documents signed by the parties, when offered as evidence in a proceeding to enforce the settlement.

(2)   Certain criminal threats and conduct.

(3)   Fraudulent communications made during mediation, when offered as evidence in a proceeding to enforce or set aside an agreement

788425.3

reached in mediation as a result of that fraudulent communication.

(4)     Documents which exist independently of the mediation.

42 Pa. C.S. § 5949(b).  As set forth in his Declaration, McGough has no knowledge that any of these exceptions does, or has been determined by this Court to apply, and nothing in the docket entries indicates that any of these exceptions is applicable here.

In addition to the right and duty of confidentiality created by the Pennsylvania statute, this Court has, and other courts have, recognized a federal mediation privilege under Fed. R. Evid. 501, protecting mediation communications and documents from disclosure.  In *Sheldone, supra,* Magistrate Judge Caiazza (now retired) recognized a federal evidentiary privilege for mediation communications.[2]  Applying the four factors articulated by the Supreme Court in *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923 (1996), the court ruled that:  (1) the mediation privilege is rooted in an imperative need for confidence and trust; (2) the mediation privilege serves the public interests of encouraging settlement and reducing court dockets; (3) the evidentiary detriment caused by the privilege is modest; and (4) denial of the federal mediation privilege would frustrate the parallel privilege adopted by the states.

In reaching his conclusion that there is an imperative need for confidence and trust in the mediation process, Magistrate Judge Caiazza quoted *Lake Utopia Paper Ltd. v. Connelly Containers, Inc.,* 608 F.2d 928, at 930 (2d Cir. 1979), *cert. denied,* 444 U.S. 1076, 100 S. Ct. 1023 (1980), as follows:

---

[2] In *Sheldone,* the plaintiffs were employees of the Commission, represented by the IBT, who sued for alleged violation of the Fair Labor Standards Act, and who noticed the deposition of a Commission agent, pursuant to Fed. R. Civ. P. 30(b)(6), to include examination concerning the Commission's mediation of a grievance.  The Commission moved for a protective order, seeking to preclude discovery - through any method - of all mediation communications and documents.

788425.3

> If participants cannot rely on the confidential treatment of everything that transpires during [mediation] sessions, then counsel of necessity will feel constrained to conduct themselves in a cautious, tight-lipped, non-committal manner more suitable to poker players in a high-stakes game than to adversaries attempting to arrive at a just resolution of a civil dispute. This atmosphere if allowed to exist would surely destroy the effectiveness of a program which has led to settlements . . ., thereby expediting cases at a time when . . . judicial resources . . . are sorely taxed.

*Sheldone, supra,* 104 F.Supp. at 513.  Judge Caiazza also cited the fact that the local rules of every federal district court in this Commonwealth protect the confidentiality of communications and documents in court annexed mediations, as required by the Alternative Dispute Resolution Act of 1998, 28 U.S.C. §651 *et seq.*[3]

In concluding that recognition of a federal mediation privilege would serve the public ends of encouraging settlement and reducing court dockets, Magistrate Judge Caiazza observed:

> As noted above, mediation is intended to facilitate and promote the voluntary conciliation, compromise and resolution of civil actions. [. . .] Absent the mediation privilege, parties and their counsel would be reluctant to lay their cards on the table so that a neutral assessment of the relative strengths and weaknesses of their opposing positions could be made. [. . .] Assuming they would even agree to participate in the mediation process absent confidentiality, [. . .] [t]he effectiveness of mediation would be destroyed, thereby threatening the well established public needs of encouraging settlement and reducing court dockets. *See id.; see also generally Bank of Amer. Nat. Trust & Sav. Ass'n. v. Hotel Rittenhouse Assoc.,* 800 F.2d 339, 344 (3d Cir. 1986) (acknowledging "the strong public interest in encouraging settlement of private litigation"); *University of Tenn. v. Elliott,* 478 U.S. 788, 798, 92 L. Ed. 2d 635, 106 S. Ct. 3220 (1986) (noting "the public's interest in conserving judicial resources").

---

[3] The Alternative Dispute Resolution Act mandates that each United States district court authorize alternative dispute resolution processes in all civil actions and devise its own ADR program.  That Act further mandates that "each district court shall by local rule [. . .] provide for confidentiality of the alternative dispute resolution processes and [] prohibit disclosure of confidential dispute resolution communications." 28 U.S.C. §652(d).

788425.3

*Sheldone, supra,* 104 F.Supp. at 514.

The *Sheldone* court concluded that the evidentiary detriment caused by recognition of the privilege was modest for the same reasons the Supreme Court reached that conclusion in *Jaffee:* The admissions allegedly made during the mediation most likely would never have been made had the Commission not participated in the mediation with the understanding that the process was confidential. As to the fourth factor, frustration of a parallel privilege recognized by the states, Magistrate Judge Caiazza noted that 49 states and the District of Columbia recognize a privilege for mediation communications.

The court in *Sheldone* identified the following, non-exhaustive elements of the federal mediation privilege, all of which are consistent with the Pennsylvania mediation statute:

- "The privilege protects from disclosure 'all written and oral communications made in connection with or during' a mediation conducted before a 'neutral' mediator."

- "No such written or oral communication may be 'used for any purpose (including impeachment) in the civil action or in any other proceedings.'"

- "Except for a written settlement agreement or any written stipulations executed by the parties or their counsel, no party or counsel shall be bound by anything done or said' during the mediation process."

- "[T]he mediation privilege does not protect from disclosure 'any evidence otherwise' and independently 'discoverable merely because it was presented in the course of' the mediation."

*Sheldone, supra,* 104 F.Supp. at 517.

Magistrate Judge Caiazza's reasoning in *Sheldone* was adopted in *Chester County Hospital v. Independence Blue Cross,* 2003 U.S. Dist. LEXIS 25214 (E.D. Pa Nov. 7, 2003). A federal mediation privilege was also recognized in *In re RDM Sports Group, Inc.,* 277 B.R. 415, 431 (Bank. N.D. Ga. 2002), and *Folb v. Motion Picture Indus.*

788425.3

*Pension & Health Plans,* 16 F. Supp. 2d 1164, 1177 (C.D. Cal. 1998), *aff'd.* 216 F.3d 1082 (9th Cir. 2000). *See also United States v. Union Pac. R.R. Co.,* No. 06-1740, 2007 U.S. Dist. LEXIS 40178 (C.D. Cal. May 23, 2007)(recognizing in *dicta* the federal mediation privilege); *Sampson v. The School Dist. of Lancaster,* No. 05-6414, 2008 U.S. Dist. LEXIS 91421 (E.D. Pa Nov. 5, 2008)(decided on other grounds, but finding the reasoning in *Sheldone* persuasive); *Nielsen-Allen v. Indus. Maint. Corp.,* 2004 U.S. Dist. LEXIS 4199 (D.V.I. Jan. 28, 2004)(noting that a majority of jurisdictions enforce a mediation privilege, but relying on the mediation privilege set forth in the local court rule to bar a motion for sanctions based on communications during a mediation session). *Cf. United States Fid. & Guar. Co. v. Dick Corp., supra,* and *Beazer East, Inc. v. The Mead Corp.,* 412 F.3d 429, 434 (3d Cir. 2005), *cert. denied,* 546 U.S. 1091 (2006) ("Both Local Appellate Rule (LAR) 33.5 and sound judicial policy compel the conclusion that parties to an appellate mediation session are not bound by anything short of a written settlement. Any other rule would seriously undermine the efficiency of the Appellate Mediation Program by compromising the confidentiality of settlement negotiations.")

The federal mediation privilege protects from disclosure all written and oral communications made in connection with or during the mediation session held on October 8, 2008, and none of those written or oral communications may be used "for any purpose" in this civil action. *Sheldone, supra.* Accordingly, the documents and information sought from McGough as mediator are privileged and inadmissible at least absent an exception or, perhaps, a clear waiver by each party to the mediation.

In addition to the federal mediation privilege recognized under Fed. R. Evid. 501, this Court has created a right and duty to preserve the confidentiality of

-9-

788425.3

mediation communications and has prohibited use of such communications and documents "for any purpose" in any judicial or other proceeding.  In accordance with the mandates of the Alternative Dispute Resolution Act of 1998 that each district court provide for confidentiality of ADR processes and prohibit disclosure of confidential ADR communications, this Court adopted Section 6 of its ADR Policies and Procedures, which provides, in its entirety:

> "A presumption of confidentiality shall apply to all ADR processes. All communications associated with or taking place at an ADR session will be treated as confidential information.  Confidential information shall not be disclosed to anyone not involved in the litigation, disclosed to the assigned Judicial Officer or used for any purpose, including impeachment, in any pending or future proceeding."

> (Emphasis added.)

As quoted above, Section 6 of this Court's ADR Policies and Procedures prohibits McGough and each of the parties from disclosing or using "for any purpose" any communications "associated with" or which occurred during the mediation session. Section 6 provides no exception to those prohibitions.

For all of these reasons, McGough respectfully submits and asks this Court to rule that the communications and documents he has been subpoenaed to disclose are privileged and protected from disclosure under 42 Pa. C.S. § 5949, the federal mediation privilege recognized by this Court and other courts, and by Section 6 of this Court's ADR Policies and Procedures.  McGough therefore submits that his Motion to Quash the subpoena issued to him must be granted under Fed. R. Civ. P. 45(c)(3)(A)(iii) at least unless this court determines that an exception applies or, perhaps, that each of the parties has waived his, her or its right to preserve the confidentiality of the mediation communications and documents.

-10-

**B.    The Subpoena Must be Quashed because No Exception to the Right and Duty to Preserve the Confidentiality of the Mediation Communications and Documents Applies.**

Although the language of Section 6 of this Court's ADR Policies and Procedures provides no exception to its prohibition against disclosure or use by any person "for any purpose" of any communications "associated with" or which occurred during the mediation session, the comment to Section 6 states that the "law may provide some limited circumstances in which the need for disclosure outweighs the importance of protecting the confidentiality of a mediation". The comment cites exclusively to the exceptions for criminal conduct and criminal threats set out in 42 Pa. C.S. §5949(b). To the extent, if at all, that the comment may be deemed to authorize recognition of an exception to Section 6 of this Court's ADR Policies and Procedures, the comment indicates that a determination that the need for disclosure outweighs the importance of protecting the confidentiality of a mediation is to be made only "after application of legal tests which are appropriately sensitive to the policies supporting the confidentiality of mediation proceedings."

Here, McGough respectfully submits that such a showing cannot be made. As noted earlier, nothing in the docket suggests that any party to the mediation is alleged to have engaged in any criminal threats or behavior, the only grounds for exception recited in the comment. Assuming, *arguendo,* that the other circumstances recognized as exceptions in the Pennsylvania statute would qualify under the standard set forth in the comment as circumstances in which "need for disclosure outweighs the importance of protecting the confidentiality of a mediation," those circumstances do not appear to be present in this case. There is no signed mediated settlement

-11-

agreement at issue here, and nothing in the respective submissions of the parties refers to any alleged fraudulent representation made during the mediation.

Rather, in this case, the issue is whether the parties entered into an oral agreement on or about October 20, 12 days after the mediation session ended, and without the involvement of the mediator. *See* McGough Declaration, ¶¶ 12–17. Resolution of that issue turns on evidence concerning the post-mediation communications between the parties to this litigation. The mediation communications and documents of which McGough, as mediator, has knowledge, are simply not relevant to that issue.

As Bernhard Behrend, a professor and mediator with more than twenty five years of mediation experience, explained in his declaration:[4]

> "9.    Negotiations are dynamic. Offers and demands are forever changing until there is an agreement. The more skillful the negotiators are, the more proposals will be offered as points of discussion and barter. In fact, the negotiation process anticipates a give and take (in a competitive model) or an exchange of interest-based options (in a collaborative model.) In either case, parties come to a satisfying agreement after a number of possibilities get explored, rejected, refined, and ultimately, accepted. As a result, positions taken at one point in a negotiation are not expected to, and generally do not, survive further discussion of other positions. [. . .]
>
> 10.    Beyond theory, parties change their minds as a result of the negotiation discussion. That is the expected outcome. The negotiation process asks parties to consider other possibilities. Negotiators want parties to change their minds. That change in perspective, or broader understanding, or clarity about one's interests and options allows once held positions to be abandoned in favor of a resolution. For that reason,

---

[4] Bernhard Behrend is an adjunct professor at Duquesne University's School of Leadership and Professional Advancement, teaching "Conflict Resolution," "Mediating Organizational Disputes," and "Alternative Dispute Resolution", and trains mediators in advanced mediation techniques. He has mediated hundreds of divorces, hundreds of employment disputes and hundreds of civil matters. *See* B. Behrend Declaration ¶¶ 1-6.

prior positions, suggestions, options, demands, and/or offers, all evaporate unless and until they are reduced to a written agreement.

11.    Consequently, prior negotiations say nothing about whether a subsequent agreement was reached.  Therefore, there is no information that could be offered by the testimony of a mediator that could be relevant in determining whether a subsequent agreement was reached."

Accordingly, McGough respectfully submits that no exception to the right and duty of the mediator and of the parties to this litigation to preserve the confidentiality of the mediation documents and communications applies and asks this Court to so rule.

**C.    The Subpoena Must be Quashed because Section 6 of the Court's ADR Policies and Procedures Protects the Mediation Process, and not Just the Parties.**

Because Section 6 of the Court's ADR Policies and Procedures is written in absolute terms, proscribing disclosure and use "for any purpose", by any person, of mediation communications, McGough maintains that Section 6, like the Pennsylvania statute, protects the mediation process itself, and not just the parties to any particular mediation, so that he, as the mediator, may "decline to testify despite the desires of the parties." Creo, *supra* at § 9.2.1.

McGough also submits, respectfully, that allowing mediators to be subpoenaed to testify about the mediation communications of the parties in litigation would seriously undermine the purpose and efficacy of this Court's ADR program.  It is not difficult to imagine the effects on the mediation process if mediators and counsel for the parties must inform the parties that the mediator may be compelled to testify about mediation communications if one or both of the parties (or any other person) chooses to issue a subpoena to compel such disclosure: "[I]t is unlikely that parties would intentionally disclose information that makes them vulnerable [. . .].  Thus, the whole purpose of frank and candid communication would be undermined since parties

-13-

would just decline to share information." Creo, *supra* at § 9.1.1. Accordingly, McGough respectfully submits that quashing the subpoena issued to him is necessary to protect the mediation process and asks this Court to do so on the ground that disclosure and use of mediation communications is prohibited by Section 6 of the Court's ADR Policies and Procedures.

**D.** **The Subpoena Must be Quashed at Least Absent A Waiver by Each Party of His, Her or Its Privilege and Right to Preserve the Confidentiality of All Mediation Communications and Documents**

Should this Court decline to conclude that the subpoena must be quashed for the reasons asserted in the earlier sections of this brief, then McGough contends, alternatively, that the subpoena must be quashed unless this court finds that parties have each surrendered, by virtue of voluntary acts which are inconsistent with such privilege and right, the privilege and right belonging to each of them individually to maintain the confidentiality of mediation communications and documents.

In *Chester County Hospital v. Independence Blue Cross, supra,* the United States District Court of the Eastern District of Pennsylvania considered the issue of when the federal mediation privilege recognized under Fed. R. Evid. 501 may be waived, and stated:

> "An evidentiary privilege is waived by a voluntary disclosure of confidential information to a party outside the protected relationship. *Westinghouse Elec. Corp. v. Republic of the Philippines,* 951 F. 2d 1414, 1424 (3d Cir. 1991). Inadvertent or unintended disclosure does not necessarily operate as a waiver. Where such inadvertent disclosure occurs, 'it is appropriate to ask whether the circumstances surrounding the disclosure evidenced conscious disregard of the possibility that an adversary might obtain the protected materials.' *Vanguard Savings and Loan Ass'n. v. Banks,* 1995 U.S. Dist. LEXIS 13712, Civ. A. No. 93-4627, 1995 WL 555871, *4 (E.D. Pa. Sept. 18, 1995)."

-14-

*Chester County Hospital, supra* at \*22. Not all intentional disclosures effect a waiver of a privilege. Where a party objects to a subpoena to produce documents and produces them only after being ordered by a court to do so, the production is not voluntary, and does not constitute a waiver. *Westinghouse Elec. Corp. v. Republic of the Philippines, supra* at 1427, n.14. Nor do disclosures which are not inconsistent with, or which further the purpose of, the privilege, such as disclosures made to third parties which are necessary to obtain informed legal advice, or disclosures to co-litigants. *Id.* at 1424.

Assuming that Defendant was under no court order to subpoena McGough, Defendant's action in doing so could be deemed to constitute a waiver of its privilege and right to maintain the confidentiality of mediation communications and documents. *Id.* at 1427, n.14. However, McGough has not engaged in any disclosure and he has no knowledge of any knowing and voluntary disclosure by Plaintiff or of any other knowing and voluntary act by Plaintiff which is inconsistent with Plaintiff's privilege and right to maintain the confidentiality of the mediation communications.

Accordingly, if the subpoena is not quashed on other grounds, McGough respectfully requests that this court make a determination as to whether all parties to the mediation have waived the right and privilege of confidentiality belonging individually to each of them.

## II.   The Subpoena Must be Quashed under Fed. R. Civ. P. 45 (c)(3)(A)(iv) Because it Imposes an Undue Burden on McGough

Fed. R. Civ. P. 45(c)(1) provides that "a party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden

-15-

788425.3

or expense on a person subject to the subpoena." The rule further states that the court "must" quash or modify a subpoena that:

"(iv) subjects a person to undue burden."

Fed. R. Civ. P. 45 (c)(3)(A)(iv). It is the burden of the person seeking to quash the subpoena to establish that the subpoena subjects him or her to an undue burden. *Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enters.*, 160 F.R.D. 70 (E.D. Pa. 1995).

"Undue burden" may be evaluated by considering such factors as: (1) the relevance of the information requested; (2) the need of the party for the production; (3) the burden imposed on the person subject to the subpoena; (4) whether the witness is a nonparty to the litigation; (5) the breadth of the request for production; (6) the time period covered by the subpoena; (7) the particularity with which the subpoena describes the requested production and (8) other factors as justified by the particular circumstances of the case. *In re Auto. Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 495 (E.D. Pa. 2005); *Moore's Federal Practice* 3D, § 45.32.

In this case, McGough contends that the first four and last factors cited above establish the this subpoena subjects him to an undue burden. First, the testimony and documents requested have no relevance to the issue in dispute, and, consequently, Defendant has no need for such information or production. As McGough attests in his Declaration, at the end of the session on October 8, 2008, he continued the mediation so that the parties could continue discussions outside of his presence and without his involvement. McGough did not speak with either of the parties and was not involved in any settlement discussions they had after they left his office on October 8, 2008. On October 20, 2008, based on an email McGough received

at 2:43 p.m. from plaintiff's (now former) counsel, showing a copy to defense counsel, he filed a report with this Court that the case had not been resolved. From that time, McGough had no further communications or contact with the parties or counsel regarding this matter. Simply put, McGough has no information as to what agreement was reached, if any.

As stated in the Declaration of Bernhard Behrend, "prior negotiations say nothing about whether a subsequent agreement was reached. Therefore, there is no information that could be offered by the testimony of [the] mediator that could be relevant in determining whether a subsequent agreement was reached." Any information McGough may recall pertaining to settlement discussions during the October 8, 2008 mediation session is not relevant to the issue to be decided by this Court because the alleged agreement was reached, if at all, outside the mediation session and without his involvement. Because McGough has no information relevant to the issue before the court (and, consequently, the Defendant has no need for the information) the subpoena results in an undue burden to McGough and should be quashed.

The subpoena also imposes an undue burden on McGough, a non-party, because it puts him between an ethical "rock" and a contempt "hard place." In addition to the nondisclosure commands of Section 6 of this Court's ADR Policies and Procedures and of 42 Pa. C.S. § 5949, discussed earlier, Standard V, Confidentiality, of the Model Standards of Conduct for Mediators adopted as of September, 2005 by the American Arbitration Association, the American Bar Association's Section of Dispute Resolution and the Association for Conflict Resolution (available at www.mediationwp.org\pg202.cfm) provides, in part:

-17-

788425.3

> "A. A mediator shall maintain the confidentiality of all information obtained by the mediator in mediation, unless agreed to by the parties or required by applicable law."

McGough has not been authorized by both parties to disclose the mediation communications and documents and is unaware of any agreement by them that he may do so. *See* McGough Declaration. Further, as discussed in the earlier sections of this brief, no provision of the Pennsylvania statute or of this Court's ADR Policies and Procedures requires McGough to disclose the mediation communications and documents. Neither does any other applicable law. To the contrary, both the Pennsylvania statute and the Court's ADR Policies expressly prohibit him from doing so. Therefore, the compliance with the subpoena would be inconsistent not only with the law, but also with McGough's ethical obligations under the Model Standards of Conduct for Mediators such that the subpoena results in an undue burden to McGough and should be quashed.

The subpoena also imposes an undue burden on McGough's time and professional practice and causes him to incur expense. McGough has already been required to sit through one hearing and now is being commanded to sit through at least one other hearing, despite his lack of any relevant or probative information. He has had to retain counsel to deal with the conflict between the subpoena and his duty under the Pennsylvania statute, this Court's ADR Policies and Procedures and Standard V, Confidentiality, of the Model Standards of Conduct for Mediators. As noted in his Declaration, McGough is an attorney, as well as a mediator, and had to take time away from his practice to attend the previous court hearing and deal with the subpoena. Unless his Motion is granted, he will also be required to take time away from his practice to attend the upcoming court hearing and, perhaps, other

-18-

788425.3

future hearings, all without being compensated for his time. (He did receive the witness fee.) In the case of a nonparty witness who is a professional, the court may consider the effect complying with the subpoena will have on his professional practice. *See, e.g., Moore v. Armour Pharm.* Co., 927 F.2d 1194, 1197-1198 (11th Cir. 1991) (court properly quashed deposition subpoena directed to Center for Disease Control staff physician because doctor was needed "in dealing with a national health crisis").

For all of these reasons, McGough respectfully requests that this Honorable Court grant his Motion to Quash the subpoena as imposing an undue burden on him.

### III.    Conclusion

WHEREFORE, on the basis of the foregoing, his motion and the evidence submitted in support of his motion, McGough respectfully asks this Court to conduct a hearing on his motion and to quash the subpoena issued to him.

Dated:  May 18, 2009

By: /s/ Laura A. Candris
Laura A. Candris
PA I.D. #33896
lac@muslaw.com

MEYER, UNKOVIC & SCOTT LLP
Henry W. Oliver Building
535 Smithfield Street, Suite 1300
Pittsburgh, PA 15222-2315
(412) 456-2891
(412) 456-2864/Fax

By: Mary Kate Coleman
Mary Kate Coleman
PA I.D. #37596
MKColeman@rhwrlaw.com

788425.3

-20-

RILEY, HEWITT, WITTE and ROMANO, P.C
650 Washington Road, Suite 300
Pittsburgh, PA 15228
(412) 341-9300

ATTORNEYS FOR Hugh F. McGough

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copies of the within BRIEF IN SUPPORT OF MOTION OF HUGH F. MCGOUGH TO QUASH SUBPOENA was served, this 18th day of May, 2009, upon Plaintiff, Cathalene S. Gatto, at her address of record, 205 West Sheridan Ave., New Castle, PA 16105 by First-Class United States Mail, postage prepaid, and upon counsel of record for Defendant, via the Court's ECF system, addressed to: mkcoleman@rhwrlaw.com, mmunsch@reedsmith.com, aquesnelle@reedsmith.com and cryan@reedsmith.com.

By: /s/Laura A. Candris

Attorney for Hugh F. McGough

--